1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  SUTTER HEALTH SACRAMENTO
    SIERRA REGION, dba SUTTER
12  MEDICAL CENTER SACRAMENTO,         NO. 2:08-cv-03051-MCE-KJM

13            Plaintiff,

14       v.                            MEMORANDUM AND ORDER

15  MICHAEL O. LEAVITT SECRETARY
    OF HEALTH AND HUMAN SERVICES,
16
              Defendant.
17

18                         ----oo0oo----

19

20

21       Through the present litigation, Plaintiff Sutter Health

22  Sacramento Sierra Region, dba Sutter Medical Center Sacramento

23  (hereinafter "Sutter") alleges that Medicare's proposed

24  termination of its approval for Sutter's heart transplant program

25  improperly runs counter to Medicare's own provisions for

26  administering such programs.

27  ///

28  ///

                                 1

Defendant Michael A. Leavitt, as Secretary of Health and Human Services and the government official in charge of Medicare, now moves to dismiss Sutter's Complaint, for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1),[1] on grounds that Sutter has not satisfied a necessary prerequisite to suit; namely, the exhaustion of available administrative remedies.  Alternatively, Defendant moves to dismiss Plaintiff's Complaint for failure to state a viable cause of action under Rule 12(b)(6).

   As set forth below, the Court finds that because Sutter failed to exhaust its administrative remedies before filing the present lawsuit, this Court cannot entertain Sutter's claims at the present time.  Dismissal on that ground will therefore be ordered.

**BACKGROUND**

   This case challenges the proposed termination of Medicare funding for Sutter's heart transplant center, as relayed to Sutter by Defendant's designated agency for administering the Medicare program, the Centers for Medicare and Medicaid Services ("CMS") on December 12, 2008.  The stated reason for termination was Sutter's continuing low volume of heart transplants, despite Sutter's implementation of a corrective action plan ("CAP") in 2006 to remedy that shortcoming.

///

---

   [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

According to the December 12 notice, the termination was to become effective on January 15, 2009.  In order to facilitate full briefing on Sutter's request for injunctive relief to prevent termination of its program, that effective date was changed by stipulation of the parties to February 20, 2009.

Sutter's heart transplant program was initially approved by CMS in 1997, under rules established in Medicare's 1987 National Coverage Determination, or NCD.  <u>See</u> 52 Fed. Reg. 10935 (April 6, 1987).  The 1987 NCD established a minimum volume requirement for heart transplant centers at twelve transplants on an annual basis.  <u>Id</u>. at 10947.

Despite CMS' initial approval, Sutter never met Medicare's annual threshold requirements. It never exceeded seven transplants a year, and sometimes performed as few as three.  Sutter nonetheless claims to have a good outcome rate, allegedly because of its highly trained staff (Sutter is not a teaching hospital and consequently all care is performed by seasoned professionals on the regular staff) and their considerable experience with open heart procedures in addition to full transplants.

In 2006, CMS requested data from Sutter and other transplant centers that did not satisfy Medicare's volume standards.  On January 30, 2007, based on Sutter's response, Sutter was notified that Medicare payment approval would be terminated unless an approved CAP was submitted within 30 days.  The January 30, 2007 notice cited both the fact that Sutter had performed only three heart transplants in 2005 and four in 2006, as well as the fact that this small number made it difficult to gauge meaningful statistical outcomes.

1    After granting an extension for submission of the CAP,

2  Sutter eventually submitted its proposed correctional action plan

3  on March 22, 2007, along with its response to CMS' letter

4  expressing its intent to terminate the Sutter program.

5  Essentially, Sutter pointed to mitigating facts like good

6  clinical results and various explanations for its low volume,

7  including the fact that it had not obtained the means to utilize

8  ventricular assist devices (VADs) for very sick patients to

9  alleviate failing heart function.  Because such patients

10  consequently had to seek treatment at heart transplant facilities

11  with VAD capability (there were a total of eleven Medicare-

12  approved heart transplants within California), those facilities

13  obtained priority for receiving organ donations destined for the

14  sickest individuals.

15    In the meantime, in March of 2007, CMS issued new

16  "conditions of participation" ("CoPs") for organ transplant

17  centers, as set forth in 42 C.F.R. Part 482, subpart E.  72 Fed

18  Reg 15198 (March 30, 2007).  Under those requirements, a

19  transplant center had to perform ten or more transplants per year

20  "to demonstrate commitment to its transplant program and gain

21  adequate clinical experience."  Id. at 15217.  This volume

22  directive was later codified at 42 C.F.R. § 482.80.  Heart

23  transplant previously approved under the 1985 NCD had to comply

24  with the new CoPs by June 28, 2007, and to apply for "initial

25  approval" thereunder by December 26, 2007.  42 C.F.R.

26  § 488.61(b)(1).

27  ///

28  ///

4

1    After working with Sutter to revise the proposed CAP plan

2  issued with respect to the 1987 NCD over a period of three

3  months, CMS approved it on July 2, 2007.  Between September 2007

4  and July 2008, Sutter submitted four quarterly updates on

5  implementation of that CAP.  Even though Sutter took steps to

6  obtain VAD capability, those updates showed that Sutter still had

7  performed only three heart transplants in 2007 and three in 2008,

8  only a quarter of the minimum number established by the 1987 NCD.

9  Accordingly, on or about July 29, 2008, Sutter was once again

10 advised that its program would be terminated for continued

11 failure to meet Medicare's volume requirements.

12   Despite this notification, CMS still permitted Sutter to

13 submit further information bearing on its proposed decision.

14 Consequently, on September 15, 2008, Sutter made another written

15 submission presenting its case for continued inclusion on

16 Medicare's approved list of transplant providers.  After

17 considering those mitigating circumstances, CMS ultimately

18 concluded that the mitigating circumstances identified by Sutter

19 were not sufficiently compelling to warrant approval.  Therefore,

20 on December 12, 2008, Sutter was notified in writing that

21 Medicare approval would be withdrawn under the 1987 NCD, and that

22 Sutter's request for initial approval under Medicare's new CoPs

23 would be denied, with both decisions based on low volume.  The

24 December 12 letter initially specified that Sutter's termination

25 would become effective on January 15, 2009, or 34 days after

26 issuance of the final notice.  As stated above, however, to

27 facilitate this Court's review that termination date was extended

28 to February 20, 2009.

5

1

**STANDARD**

2

3      While Defendant moves to dismiss Plaintiff's lawsuit under
4  Rule 12(b)(1) for lack of subject matter jurisdiction, a literal
5  reading of Rule 12(b) suggests that the defense asserted here, a
6  failure to exhaust nonjudicial remedies, may not be made by pre-
7  answer motion.  As the Ninth Circuit pointed out in <u>Ritza v.
8  Int'l Longshoremen's and Warehousemen's Union</u>, 837 F.2d 365, 369
9  (9th Cir. 1988), none of the defenses actually described in
10 Rules 12(b)(1) through (7) actually encompass a failure to
11 exhaust.  Nonetheless, in <u>Bass v. Social Security Administration</u>,
12 872 F.2d 832, 833 (9th Cir. 1989), the Ninth Circuit found that
13 failure to exhaust administrative remedies mandated by the Social
14 Security Act (and incorporated within the Medicare statute)
15 deprived the district court of jurisdiction.  Failure to exhaust
16 has therefore  been viewed as a "matter in abatement" related to
17 jurisdiction that consequently can be heard as a "non-enumerated"
18 Rule 12(b) motion.  <u>Inlandboatmens Union of the Pacific v. Dutra
19 Group</u>, 279 F.3d 1075, 1078 n.2 (9th Cir. 2001), citing <u>Ritza</u>,
20 837 F.3d at 369.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

6

**ANALYSIS**

A.   **Federal Question Jurisdiction Is Barred Unless And Until Administrative Review Under Medicare Statutes And Regulations Has Been Completed.**

42 U.S.C. § 405(g) of the Social Security Act, as incorporated into the Medicare Act at 42 U.S.C. § 1395cc(h)(1), provides that a Medicare provider dissatisfied with the termination of its approval may seek judicial review of Medicare's decision in that regard only after the Secretary's "final decision".   Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 20-21 (2000).   Section 405(h), as also incorporated into the Medicare Act at § 1395ii, states specifically that federal question jurisdiction over Medicare matters is barred except as provided in the statute.[2]   As the Ninth Circuit explained in Queen of Angels/Hollywood Presbyterian Med. Ctr. v. Shalala, 65 F.3d 1472, 1481 n. 23 (9th Cir. 1995), Section 405(h) is "a sweeping and direct prohibition against judicial review of benefits decision outside of the procedures established in the Social Security Act."

It is therefore clear that, barring extenuating circumstances, Sutter can seek judicial review in this Court only after Medicare's internal review system has been exhausted and a final administrative decision has been rendered.

---

[2] It makes no difference that the complaint here includes alleged violations of due process as well as the Administrative Procedure act.   The Supreme Court has repeatedly found that § 405 applies to bar such claims.   Illinois Council, 529 U.S. at 13-14 (holding that § 405(h) bars federal question jurisdiction over both constitutional and APA claims); Heckler v. Ringer, 466 U.S. 602, 614-15 (1984) (also holding that § 405 bars federal question jurisdiction over federal and other claims).

1    Illinois Council, 529 U.S. at 20-21.  This "final decision"

2    requirement constitutes a "statutorily specified jurisdictional

3    prerequisite."  Weinberger v. Salfi, 422 U.S. 749, 766 (1975).

4    Consequently, a district court cannot waive Medicare's mandated

5    exhaustion requirements for equitable or other policy reasons.

6    See Queen of Angels, 65 F.3d at 1482.

7

8         **B.   Sutter's Claims Do Not Fall Within Any Exception To The**
          **Usual Requirement That Administrative Remedies Be**

9         **Exhausted.**

10

11        Here, Sutter unquestionably failed to exhaust its

12   administrative remedies before filing suit in this Court and

13   requesting a preliminary injunction to bar implementations of

14   Medicare's decision to revoke its provider status as a heart

15   transplant center.  Indeed, on January 23, 2009, shortly after

16   commencing the present action, it submitted a concurrent

17   administrative appeal.  See Ex. A to Pl.'s Opp.   Additionally,

18   in its Complaint, Plaintiff admits that "the Secretary's decision

19   whether a prospective provider qualifies for participation in

20   Medicare is an initial determination subject to ad administrative

21   appeal."  Complaint, ¶ 45.

22

23             **1.   Efficacy of Administrative Review**

24

25        Despite its concession that additional internal recourse is

26   indeed available, Sutter nonetheless argues that administrative

27   exhaustion should be waived under the circumstances of this

28   particular case.

First, Sutter cites case law for the proposition that the jurisdictional strictures of § 405(h) do not apply where allegations of irreparable harm make mandated administrative review the practical equivalent of no review at all.  See, e.g., Pathfinder Healthcare, Inc. v. Thompson, 177 F. Supp. 2d 895, 896-97.  Sutter argues that because its facility could conceivably be forced to close altogether and transfer its patients elsewhere, to the potential detriment of those patients, meaningful review would be circumvented.  Sutter further maintains that its procedural challenges to the manner in which termination was effectuated may also fall outside the scope of the administrative review process.

The Court finds neither contention persuasive.  The argument that potential irreparable harm makes administrative review futile has already been expressed rejected.  The Supreme Court, in Illinois Council, found that for the futility exception to apply, judicial review must be completely precluded as opposed to simply delayed.  529 U.S. at 22-23.  In the Court's view, requiring Sutter to proceed through its administrative appellate remedies would not amount to "no review at all" as Illinois Council requires in order to justify circumventing the administrative process.  Id. at 13-14.   Inconvenience in any particular case does not suffice.  Id. at 22-23.

Significantly, in Heckler v. Ringer, the Supreme Court explained the careful balance struck by Congress between individual hardship and the exhaustion of administrative remedies.  In declining to tamper with that balance, the Court stated:

1

2        "In the best of all words, immediate judicial access...
might be desirable.  But Congress, in § 405(g) and

3        § 405(h), struck a different balance, refusing
declaratory relief and requiring that administrative

4        remedies be exhausted before judicial review.....
Congress must have felt that cases of individual

5        hardship resulting from the administrative process had
to be balanced against the potential for overly casual

6        or premature judicial intervention in an administrative
system that process literally millions of claims every

7        year.  If the balance is to be struck anew, the
decision must come from Congress and not from this

8        Court."

9   466 U.S. at 627.[3]

10      Additionally, while Sutter appears to contend that matters

11  of agency procedure are not subject to administrative

12  determination, that contention also lacks merit.  In <u>Bowen v.</u>

13  <u>City of New York</u>, the Supreme Court explained that "[b]ecause of

14  the agency's expertise in administering its own regulations, the

15  agency ordinarily should be given the opportunity to review

16  application of [its] regulations to a particular factual

17  context."  476 U.S. at 484-85.  It makes eminent good sense to

18  afford the agency an opportunity, by way of the required

19  administrative appeals, to itself correct any error in applying

20  its own rules and regulations as Sutter alleges here.

21  ///

22  ///

23  _____

24      [3] While Sutter cites several out-of circuit district court
decisions in support of a contrary conclusion, those decisions

25  are not binding on this court and are unpersuasive to the extent
they diverge from the Supreme Court's pronouncements in <u>Heckler</u>

26  and <u>Illinois Council</u>.  In addition, unlike the provider-plaintiff
in <u>Frontier Health , Inc. v. Shalala</u>, 113 F. Supp. 2d 1192, 1193

27  (E.D. Tenn 2000), there is no evidence that Sutter would be
forced to close completely; indeed, given the relatively small

28  number of heart transplants performed, that function is
presumably only a small part of Sutter's overall operation.

1    Furthermore, even if some of Sutter's purported due process
2  claims are beyond the scope of administrative appeal, as Sutter
3  appears to contend, does not mean that the overall "action" in
4  its totality should not be channeled through the administrative
5  process.  As the Supreme Court states:

6         "The fact that the agency might not provide a hearing
          for [a] particular contention, or may lack the power to
7         provide one, is beside the point because it is the
          "action" that must be channeled through the agency.
8         After the action has been so channeled, the court will
          consider the contention when it later reviews the
9         action.  And a court reviewing an agency determination
          under section 405(g) has adequate authority to resolve
10        any statutory or constitutional contention that the
          agency does not, or cannot, decide[.]"
11

12 Illinois Council, 529 U.S. at 23 (citations omitted).

13

14              **2.   Collateral Claim Exception to Exhaustion**
                     **Requirement**
15

16

17    An exception to the rule that administrative remedies must
18 be exhausted has also been recognized to permit judicial review
19 of "collateral" constitutional claims challenging an interim, or
20 non-final, agency decision.  In order to qualify for a waiver of
21 exhaustion, under that theory, however, a "colorable
22 constitutional claim" is required, along with a entirely
23 collateral challenge to the merits of the substantive claim being
24 presented, and a finding that full relief could not be afforded
25 if administrative remedies were to be exhausted.  See Mathews v.
26 Eldridge, 424 U.S. 319, 328-332 (1976); Boettcher v. Sect'y of
27 Health and Human Servs., 759 F.2d 719, 721-22 (9th Cir. 1985);
28 Hoye v. Sullivan, 985 F.2d 990, 991 (9th Cir. 1993).

                                11

1    Here, Plaintiff fails to satisfy any of these three
2    criteria.  Sutter's sole alleged constitutional claim is
3    procedural due process stemming from the claimed liberty interest
4    in protecting its reputation for delivering quality heart
5    transplant services.  Plaintiff alleges it should have been
6    provided a hearing, pre-termination, in order to present
7    mitigating circumstances in favor of its continued Medicare
8    certification.  Complaint, ¶ 65.  With respect to its argument
9    that a hearing was required, the Ninth Circuit has specifically
10   found that Medicare providers are not entitled to an evidentiary
11   hearing, or to a completed administrative appeal, before
12   termination.  Cassim v. Bowen, 824 F.2d 791, 796-98 (9th Cir.
13   1987).

14   Significantly, too, any due process that is required can be
15   accomplished informally.  Where, as here, post-termination
16   appeals are available, all that due process requires is that the
17   party facing termination receive "oral or written notice" of the
18   reasons for the proposed action and "an opportunity to respond."
19   Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46 (1985)
20   The extensive process outlined above, which spanned a period of
21   nearly two years, more than sufficed in that regard.  CMS twice
22   gave plaintiff advance notice of its failure to meet the
23   prescribed volume requirement, in January of 2007 and again in
24   July of 2008.  Complaint, ¶ 32.  It gave Sutter more than a year
25   to come into compliance after approving its corrective action
26   plan and allowed Plaintiff to present formal written submissions
27   outlining its alleged mitigating circumstances in March of 2007
28   and again in September of 2008.  Id. at ¶¶ 29-30, 35, 37.

12

1   Under these circumstances, adequate due process prior to
2   termination was unquestionably afforded.

3       Even more fundamentally, the Ninth Circuit has also found
4   that a Medicare provider's termination does not affect any
5   property interest protected by due process in any event, and
6   impinges on a liberty interest only when accusations are leveled
7   that are both contested and which impair the provider's
8   reputation for "honesty and morality".  Erickson v. United
9   States, 67 F.3d 858, 862-63 (9th Cir. 1995); Guzman v. Shewry,
10  544 F.3d 1073, 1084-86 (9th Cir. 2008).[4]  Here, despite
11  Plaintiff's protestations to the contrary, CMS' stated reason for
12  terminating Sutter, its failure to meet volume requirements, has
13  no bearing on Sutter's reputation or morality.  Nor is that
14  stated reason for termination even contested: Sutter candidly
15  admits that it failed to meet the volume requirements, only
16  arguing that it nonetheless should not have been terminated from
17  Medicare participation for other, extenuating reasons.

18      In addition, Sutter's alleged due process claim, stemming
19  from Medicare's purported failure to follow the appropriate
20  procedures in effectuating Sutter's termination, is not
21  completely independent, or collateral from, its substantive claim
22  that mitigating circumstances weigh against termination.

23

24      [4] Marcello v. Long Island R.R., 465 F. Supp.2 54, 58-59
    (S.D.N.Y. 1979) is distinguishable.  Unlike this case, the charge
25  at issue was charges involving the sale of alcoholic beverages to
    other employees, and evidence was presented to the effect that
26  certain liquor kits were stolen.  The court held that termination
    on that charge, and based on that evidence, did impugn the
27  plaintiff's honor and integrity.  The situation present here,
    where Sutter was terminated based on its undisputed failure to
28  meet transplant volume requirements, could hardly be more
    different.

Claims are not necessarily collateral simply because they are
procedural in nature.  Heckler v. Ringer, 466 U.S. 602, 615
(1984).  A claim is collateral only if it "is not 'bound up' with
the merits so closely that [the court's] decision would
constitute interference with the agency process.  Johnson v.
Shalala, 2 F.3d 918, 920 (9th Cir. 1993).  Here, the Court finds
that the substantive issues underlying Sutter's termination as a
Medicare approved heart transplant provider are inextricably
intertwined with the procedural requirements necessary to effect
that termination.  Moreover, the Court believes that premature
judicial intervention, as advocated by Plaintiff, would
impermissibly appear with the agency's own decision making
process.

   Although Sutter relies on several out-of-circuit district
court decisions in advocating a different result, the Court
declines to follow those decisions.[5]  Furthermore, while Sutter
also points to potential irreparable harm, allegations of such
injury cannot bypass the fundamental requirement of a colorable
constitutional claim.  See Winter v. California Medical Review,
Inc., 900 F.2d 1322, 1326 (9th Cir. 1990) (treating colorable
claim requirement as inherent part of irreparable injury
element).

_____

   [5] See, e.g.,  Libbie Rehab. Ctr., Inc. v. Shalala, 26 F.
Supp. 2d 128 (D.D.C. 1998); and Mediplex of Mass., Inc. v.
Shalala, 39 F. Supp. 2d 88, 93 (D. Mass. 1999) (citing Libbie).
In addition, while Sutter also urges the Court to waive
exhaustion of its allegedly collateral non-constitutional claims,
because the Court finds that the procedural challenges at issue
are not collateral, it is not necessary here to determine whether
the collateral waiver doctrine extends to non-constitutional
claims.

Finally, it is illogical for Sutter to argue, as it does, that administrative review would serve no purpose under the circumstances of this case.  As the Supreme Court, in <u>Bowen</u>, <u>supra</u>, explains:

> "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, and to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review."

<u>Bowen v. City of New York</u>, 476 U.S. at 484, quoting <u>Weinberger v. Salfi</u>, <u>supra</u>, 422 U.S. at 765.

These considerations apply squarely to this case and mandate that exhaustion not be waived.

**C.   There Is No Basis For Mandamus Relief Under The Circumstances Of This Case.**

**1.   Sutter's failure to exhaust administrative remedies precludes this Court from exercising mandamus jurisdiction.**

Although Plaintiff also seeks to predicate federal jurisdiction on the federal mandamus statute, 28 U.S.C. § 1361, that statute confers jurisdiction "only if plaintiff has exhausted all other avenues of relief <u>and</u> only if the defendant owes him a clear nondiscretionary duty."  <u>Heckler v. Ringer</u>, 466 U.S. 602, 616 (1984) (emphasis added).  Sutter cannot satisfy either prerequisite since, as discussed above, it has not exhausted its administrative remedies.  Unless such exhaustion has occurred, jurisdiction under the Mandamus Act is unavailable. <u>Hironymous v. Bowen</u>, 800 F.2d 888, 893 (9th Cir. 1986).

1        **2.   No clear, nondiscretionary is present upon which
2             mandamus relief can be predicated in any event.**

3        Additionally, for mandamus to issue, a clear,

4   nondiscretionary duty must be identified.  "Mandamus is an

5   extraordinary remedy and is available to compel a federal

6   official to perform a duty only if: (1) the individual's claim is

7   clear and certain; (2) the official's duty is nondiscretionary,

8   ministerial, and so plainly prescribed as to be free from doubt,

9   and (3) no other adequate remedy is available."  <u>Kildare v.</u>

10  <u>Saenz</u>, 325 F.3d 1078, 1084 (9th Cir. 2003), quoting <u>Patel v.</u>

11  <u>Reno</u>, 134 F.3d 929, 931 (9th Cir. 1998).

12       Here, Medicare has no such duty to postpone termination

13  until after administrative appeals have been exhausted.  To the

14  contrary, the applicable regulation, 42 C.F.R. § 489.53(d)(1),

15  allows Medicare to make termination effective just 15 days

16  following notice.[6]   Administrative appeals could not possibly be

17  exhausted within that short period.  The inescapable inference is

18  that the regulations necessarily contemplate termination to be

19  effective before the appeals process has been completed, a

20  conclusion reinforced by the fact that appeals can be taken up to

21  60 days post termination.  42 C.F.R. § 498.40.  The contention

22  that CMS owed Sutter a nondiscretionary duty to provide a pre-

23  termination appeal simply fails under these circumstances.

24

---

25       [6] Plaintiff cannot point to termination provisions under the
26  2007 CoPs in arguing that a different rule should apply.
    Sutter's termination notice states clearly that Medicare approval
26  was withdrawn for failure to satisfy the pre-existing 1987 NCD.
    Complaint, Exh. A at 3.  Termination was not effectuated under
27  the newer CoPs; rather CMS only declined to grant Sutter an
28  initial authorization under those rules.

1    Nor is Sutter's reliance on statements in the preamble to
2    the 2007 Final Rules any more persuasive.  See 72 Fed. Reg.
3    15248.  Plaintiff argues that said preamble requires a "follow up
4    survey" prior to termination of heart transplant centers not
5    meeting the volume requirement (Complaint, ¶¶ 24-25), and further
6    points to a statement in the preamble that "in most cases,
7    Medicare providers and suppliers are permitted to continue to
8    participate in Medicare while an appeal is pending."  72 Fed.
9    Reg. at 15248.  As an initial matter, Sutter's termination was
10   effected under the 1987 NCD and not the 2007 conditions of
11   participation.  In addition, the preamble to the 2007 Rules does
12   not rise to the level of a legal duty as required for mandamus
13   jurisdiction in any event.  Importantly, the actual governing
14   regulation simply gives CMS the discretion to review a provider's
15   compliance (See 42 C.F.R. § 488.61(a)(3); 488.20).  Moreover, to
16   the extent that the 2007 preamble appeared to recognize a right
17   to continue to participate in Medicare while an appeal was
18   pending, shortly after it was issued the Secretary recognized
19   that it was inconsistent with Medicare policy over the past
20   30 years and expressly repudiated it.  73 Fed. Reg. 68502, 68787
21   (Nov. 18, 2008).[7]  Significantly, that repudiation occurred before
22   CMS' final termination notice in December of 2008, so Sutter
23   cannot allege that it reasonably believed anything otherwise at
24   the time of that termination.
25   ///
26
27        [7] The preamble was revised to read as follows: "Medicare
     providers and suppliers are not entitled to have their program
28   participation continue during the pendency of the administrative
     appeals process."  Id.

Significantly, too, at the time the 2007 preamble was published, CMS was already some fifteen months into Sutter's termination process, which makes it hard for Sutter to maintain that it believed all along that it would be permitted to continue in operation after a termination.

As discussed above, Sutter's reliance on 42 C.F.R. § 402.5 for providing the requisite nondiscretionary duty is also unavailing, since to the extent that regulation does provide for a pre-termination hearing, it is limited to specific, culpable statutory violations, like knowing and willful improper billing, charging or reporting practices.  See 42 C.F.R. § 402.3.  Not only is § 402.5 inapplicable, but by specifically authorizing pretermination appeals under the narrow circumstances it encompasses, it suggests that the Medicare Regulations permit such pretermination review only where expressly provided, a situation notably absent here.

Finally, while Sutter also points to provisions of the State Operations Manual that suggest that CMS should have given Sutter 210 days in which to cure any volume deficiency (See Complaint, ¶ 25), the fact that the termination process here extended well beyond those parameters (at almost two years) makes reliance on any such provision misplaced.  Furthermore, the State Operations Manual itself qualifies the 210-day period by stating that "[a]ll timeframes are maximum," and that CMS "may terminate more quickly as long as the regulatory requirements for notification of the public and provider are satisfied."  State Operations Manual, Exh. F to Plaintiff's Appendix of Authorities, at p. 42.

///

1  The applicable notice period before termination, as set forth
2  above, is 15 days pursuant to 42 C.F.R. 489.53(d).

3      In sum, although mandamus jurisdiction is precluded here at
4  the onset due to Sutter's failure to exhaust its administrative
5  remedies, it is also unavailable in any event because no clear,
6  nondiscretionary duty to act on the part of CMS has been
7  identified.

8

9  **CONCLUSION**

10

11      Given the foregoing, the Court finds that Sutter's failure
12  to exhaust its available administrative remedies in this matter
13  makes any resort to judicial intervention premature at the
14  present time.  Because that failure to exhaust is jurisdictional
15  in nature, Sutter's Complaint is dismissed, without prejudice,
16  pending completion of the administrative appellate process.
17  Plaintiff's Motion to Dismiss on jurisdictional grounds, which
18  the Court will construe as an unenumerated Rule 12(b) for the
19  reasons set forth above, is accordingly GRANTED.

20      Because Sutter's lawsuit is therefore terminated for reasons
21  related to the Court's jurisdiction, it is not necessary to
22  address Defendant's alternative contention that the lawsuit also
23  be dismissed for failure to state a cognizable claim under
24  Rule 12(b)(6), and the Court declines to do so.

25  ///
26  ///
27  ///
28  ///

1   Additionally, given the dismissal of Plaintiff's complaint on
2   jurisdictional grounds, Sutter's concurrently pending Motion for
3   Preliminary Injunction becomes moot, and is accordingly DENIED on
4   that basis.
5        The Clerk is directed to close this file.
6        IT IS SO ORDERED.
7
    Dated: February 13, 2009
8
9                                    _____
10                                   MORRISON C. ENGLAND, JR.
                                     UNITED STATES DISTRICT JUDGE
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                    20